[10 NYS3d 78]

In the Matter of City of New York et al., Respondents, v New York State Nurses Association et al., Appellants.

First Department, May 26, 2015

### APPEARANCES OF COUNSEL

*Cohen, Weiss and Simon LLP*, New York City (*Joseph Vitale* and *Travis M. Mastroddi* of counsel), for New York State Nurses Association and another, appellants.

*Philip L. Maier*, New York City (*Abigail R. Levy* and *John F. Wirenius* of counsel), for Board of Collective Bargaining of the City of New York and another, appellants.

*Zachary W. Carter, Corporation Counsel*, New York City (*Jane L. Gordon* and *Francis Caputo* of counsel), for respondents.

### OPINION OF THE COURT

Acosta, J.P.

In this CPLR article 78 proceeding, the question presented to this Court is not whether we agree with the administrative agency's determination that a union was entitled to obtain certain documents relevant to disciplinary proceedings against two of its members, but simply whether the determination was rationally based. Because the agency is entitled to substantial

deference, and since it engaged in a thorough analysis of its enabling statute, its own precedent, the underlying collective bargaining agreement, and relevant Appellate Division jurisprudence, we find no basis to annul its determination.

Facts

Respondent New York State Nurses Association (the Union) represents more than 8,000 registered nurses, a small number of whom are employed by petitioner New York City Human Resources Administration (HRA). The Union's members are covered by a collective bargaining agreement among the Union, the City, HRA, and nonparty New York City Health and Hospitals Corporation (the agency that employs the majority of the members).

In October 2009, HRA served disciplinary charges on two Union nurses, alleging that they violated various provisions of HRA's "Code of Conduct" by, among other things, misrepresenting on time sheets and to their supervisors that they had worked on days when they had not worked.

Along with the charges, HRA sent notices informing both nurses of the steps in the disciplinary process that could ensue.[1] According to the notice, step I was an informal conference at which the conference holder would recommend an appropriate penalty if the charges were sustained. If either nurse did not accept the recommendation as to her, she could either proceed with a hearing pursuant to Civil Service Law § 75 or elect to follow the grievance procedure outlined in the agreement. Notably, the agreement defines "grievance" to include "[a] claimed wrongful disciplinary action taken against an employee." If the nurse employee elected the agreement procedure, she would be required to attend a "Step II Grievance Hearing" before an HRA hearing officer.[2] The notices requested the nurses to "bring to the [h]earing all relevant documentation in support of your appeal."

In response, the Union sent letters dated December 4, 2009 to HRA on behalf of each of the charged nurses, requesting HRA to provide certain information "[i]n order for the [Union] to represent [the nurse]" in the disciplinary proceedings. Generally, the Union requested that HRA provide copies of its Code

---

1. The multi-step process may vary, depending on the outcome of the initial step and whether the employee thereafter elects to proceed in accordance with Civil Service Law § 75 or the agreement.

2. The agreement also provides for subsequent steps in the grievance process that are not relevant to the instant appeal.

of Conduct, documentation related to the automated timekeeping on the relevant dates, policies related to timekeeping, policies regarding lunch breaks, records for the treatment of certain patients on certain dates, statements by any witnesses who alleged that the nurse was absent from work on the dates charged, and a written statement explaining "how [the nurse] violated" the Code of Conduct. The Union also requested that HRA produce the supervisor to whom the nurses allegedly made false statements about their absences, as well as certain other witnesses.

HRA failed to provide any of the requested materials. Step I informal conferences were held as to both nurses on or about December 14, 2009. The conference holder subsequently sustained some but not all of the charges against each nurse, and recommended termination of both of them.

In January 2010, both nurses filed statements indicating their refusal to accept the step I recommendation of termination, requesting to submit the matter to the latter steps of the grievance process set forth in the agreement, and waiving their rights to Civil Service Law §§ 75 and 76 disciplinary procedures.

In February 2010, the Union filed an "improper practice" petition with the Board of Collective Bargaining of the City of New York (the Board), contending that HRA's denial of the Union's disclosure request violated Administrative Code of the City of New York § 12-306 (a) (1) and (4) (New York City Collective Bargaining Law [NYCCBL]).[3] Section 12-306 (a) (1) provides that it is an improper practice for a public employer "to interfere with, restrain or coerce public employees in the exercise of their rights" to form, join, or assist public employee

---

3. The NYCCBL, which regulates labor relations between the City and its employees, is the City's local analogue statute to the Civil Service Law, commonly known as the Taylor Law. The Taylor Law is New York's state legislation granting public employees the right to organize and collectively bargain with their employers. Civil Service Law § 212 authorizes certain governments, including the City, to enact local labor relations laws, provisions, and procedures, provided they are "substantially equivalent" to the state law (subd [1]). The New York State Public Employment Relations Board (PERB) administers the Taylor Law (see Civil Service Law § 205), and is the only entity authorized to challenge the substantial equivalency of the NYCCBL in relation to the Civil Service Law (Civil Service Law § 212 [2]). The Board of Collective Bargaining is PERB's city counterpart agency, insofar as it is vested with the power "to prevent and remedy improper public employer . . . practices, as such practices are listed in section 12-306 of [the NYCCBL]" (NYCCBL § 12-309 [a] [4]).

unions. Section 12-306 (a) (4) provides that it is an improper practice for a public employer "to refuse to bargain collectively in good faith on matters within the scope of collective bargaining with certified or designated representatives of its public employees." The NYCCBL defines "good faith bargaining" to include a public employer's duty "to furnish to [a public union], upon request, data normally maintained in the regular course of business, reasonably available and necessary for full and proper discussion, understanding and negotiation of subjects within the scope of collective bargaining" (NYCCBL § 12-306 [c] [4]).

By order dated April 28, 2011, the Board determined that the City and HRA's refusal to provide certain information to the Union was an improper practice, and granted the Union's petition to the extent of compelling the City to disclose the requested employee time sheets, any relevant witness statements in the possession, custody, or control of the City or HRA, and the requested patient records (docket No. BCB-2832-10, 4 OCB2d 20). It denied the petition to the extent of finding that the Union was not entitled to written statements explaining how the nurses violated the charged provisions of HRA's Code of Conduct, or to the production of certain witnesses, because those requests fell outside the limited duty imposed by NYCCBL § 12-306 (c) (4) to furnish "data normally maintained in the regular course of business."

In making its determination, the Board discussed several of its prior orders holding that the duty to furnish information pursuant to section 12-306 (c) (4) extends to information "relevant to and reasonably necessary for purposes of collective negotiations or contract administration," and that it also applies in the context of "processing grievances." Accordingly, the Board determined that, although the agreement "does not explicitly obligate the parties to provide requested information in conjunction with the disciplinary process," the statutory "obligation to provide information reasonably necessary for contract administration applies to requests made in the context of disciplinary grievances, and that failure to provide such materials upon request" constitutes an improper practice.

The Board also cited several PERB decisions that have "upheld the right of a union to seek information for contract administration in the context of disciplinary grievances, a conclusion which has been soundly and repeatedly endorsed by the courts." The Board then rejected the City's reliance on *Mat-*

ter of *Pfau v Public Empl. Relations Bd.* (69 AD3d 1080 [3d Dept 2010]), in which the Third Department annulled a PERB decision granting in part a public employee union's request for documents in connection with a disciplinary proceeding against an employee of the New York State Unified Court System (UCS). The Board explained that *Pfau* concerned "a hybrid disciplinary process—created by the Rules of the Chief Judge (the 'Rules'), and supplemented by additional procedures agreed upon by the parties." The Board emphasized that "the Third Department did not preclude UCS from agreeing to more extensive discovery rights in disciplinary cases," but merely found that "the text of the agreement supplementing the Rules did not establish such an agreement." In addition, the Board found support for its decision in other Third Department cases, approvingly cited in *Pfau*, "confirming PERB's decisions holding that the obligation to provide information can extend to information requested in relation to contractually-defined disciplinary procedures."

The City and HRA subsequently brought this proceeding pursuant to CPLR article 78, to annul the Board's determination. The Board and the Union separately moved to dismiss the petition.

By order entered May 8, 2012, Supreme Court denied the motions to dismiss, stating that the Board's determination "for the first time extends the acknowledged right of a union to obtain information relevant to contract interpretation grievances, to include employee disciplinary proceedings" (2012 NY Slip Op 31209[U], *4 [2012]). The court relied heavily on *Pfau*, which explained that "there is no general right to disclosure in a disciplinary proceeding" (69 AD3d at 1082) and that there are "starkly disparate roles of contractual grievances and employer disciplinary proceedings" (*id.* at 1083). The court further stated that the Board "altered decades of consistent practice without citing direct precedent, . . . while acknowledging that [the Board] itself has previously 'not had occasion to rule . . . in the context of a disciplinary grievance'" (2012 NY Slip Op 31209[U], *6). The court found that the Board's ruling "amounts to a unilateral amendment of the negotiated [agreement]" and that the Board and the Union failed to demonstrate that the Board's determination was not "affected by an error of law . . . or . . . arbitrary and capricious or an abuse of discretion. CPLR 7803 (3)" (*id.*).

The Board and the Union appeal.

Discussion

"In reviewing an administrative agency determination, courts must ascertain whether there is a rational basis for the action in question or whether it is arbitrary and capricious" (*Matter of Peckham v Calogero*, 12 NY3d 424, 431 [2009] [internal quotation marks and brackets omitted]). "A court cannot simply substitute its judgment for that of an administrative agency when the agency's determination is reasonable" (*District Council 37, Am. Fedn. of State, County & Mun. Empls., AFL-CIO v City of New York*, 22 AD3d 279, 284 [1st Dept 2005]). Moreover, "[i]t is well settled that the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld" (*Matter of Howard v Wyman*, 28 NY2d 434, 438 [1971]). "Broad deference must therefore be accorded determinations of the Board, which, pursuant to the Taylor Law, is the body charged with interpreting and implementing the NYCCBL and determining the rights and duties of labor and management in New York City" (*Matter of City of New York v Plumbers Local Union No. 1 of Brooklyn & Queens*, 204 AD2d 183, 184 [1st Dept 1994], *lv denied* 85 NY2d 803 [1995]).

Given this deferential standard of review, we are compelled to hold that the petition should have been dismissed. The Board's decision had a rational basis and was not arbitrary and capricious. To be sure, the Board engaged in a relatively expansive interpretation of the duty to furnish information embodied in NYCCBL § 12-306 (c) (4), when it determined that the duty applies in the context of these disciplinary proceedings instituted pursuant to the agreement. But its interpretation was based on the holdings of some nine prior decisions and was not irrational (*see Peckham*, 12 NY3d at 431 [agency's determination rationally based where "consistent with its own rules and precedents"]). The Board based its decision on its own precedents and related jurisprudence, and its interpretation of the NYCCBL, a statutory provision within its purview and expertise, was sufficiently reasonable to preclude our "substitut[ing] another interpretation" (*Matter of Incorporated Vil. of Lynbrook v New York State Pub. Empl. Relations Bd.*, 48 NY2d 398, 404 [1979] [internal quotation marks omitted]).

Significantly, the City and HRA do not dispute the Board's precedent holding that the duty to furnish information already applied to "contract administration" and "grievances" (including potential grievances), terminology not found in NYCCBL

§ 12-306 (c) (4). They dispute the application of that duty to disciplinary proceedings, contending that disciplinary proceedings do not constitute contract administration or other grievances. Critically, the agreement defines "grievance" to include "[a] claimed wrongful disciplinary action taken against an employee." Thus, the Board reasonably found that the underlying disciplinary matters were related to the Union's "contract administration" or, in other words, "subjects within the scope of collective bargaining" for purposes of NYCCBL § 12-306 (c) (4), and that petitioners had an obligation pursuant to that provision to disclose certain materials to the Union in connection with the disciplinary proceedings.

The Board further demonstrated reasoned judgment by fashioning a well-balanced remedy. It did not broadly or arbitrarily direct petitioners to grant the Union's request in its entirety. Instead, the Board specifically discussed each of the items requested by the Union, and found that only some of these requests were within the scope of reasonably available and material documents pursuant to NYCCBL § 12-306 (c) (4), while others fell outside the ambit of that provision.

Notably, the dissenting Board members, and subsequently the motion court, failed to address NYCCBL § 12-306 (c) (4), the key provision on which the Board relied and had broadly interpreted in previous decisions, albeit in different factual contexts. Instead, the court and the dissenting Board members cited policy concerns (outlined in *Pfau* [69 AD3d 1080]) that a union's requests for materials relevant to disciplinary proceedings could lead to inordinate delays in removing employees who have engaged in misconduct. These concerns, while not unfounded, are undermined by the Board's qualification that "documents that are . . . burdensome to provide, available elsewhere, confidential, or do not exist . . . fall outside the scope of the duty by the public employer to disclose" (internal quotation marks omitted). Furthermore, petitioners' allusion to the instant case as an example of such delays is misleading. While petitioners note that the disciplinary charges here were served in October 2009, calling this an "unduly protracted" process (quoting *Pfau*, 69 AD3d at 1083), the five-year delay is actually a result of the administrative and judicial proceedings concerning the parties' dispute over disclosure. This does not reflect how long the disciplinary process would have taken if the information requested by the Union—and ultimately ordered by the Board—had been readily produced in the first

place. In any event, the majority of the Board presumably concluded that any concerns as to the efficiency of the disciplinary process were outweighed by the Union's right to obtain the reasonably limited set of data. Thus, even if we believed that the dissenting Board members would have devised a more sensible approach in this regard, it would be improper to "substitute [our] judgment" for that of the majority of the Board (*District Council 37*, 22 AD3d at 284).

Contrary to the motion court's ruling, the Board's decision did not "amount[ ] to a unilateral amendment of the negotiated [agreement]" (2012 NY Slip Op 31209[U], *6). Although petitioners are correct that the agreement's disciplinary procedure does not explicitly provide for discovery, the Board reasonably found, based on precedent, that the absence of an express contractual provision did not constitute a waiver of the employees' statutory rights under NYCCBL § 12-306 (c) (4) (*see Matter of Chenango Forks Cent. Sch. Dist. v New York State Pub. Empl. Relations Bd.*, 21 NY3d 255, 261 n 2 [2013] [noting that a right under a collective bargaining agreement "that complements the statutory right . . . does not extinguish the statutory right" (internal quotation marks omitted)]).

Furthermore, the Board did not, as the motion court found, "alter[ ] decades of consistent practice without citing direct precedent" (2012 NY Slip Op 31209[U], *6). Rather, the Board engaged in a detailed analysis of its own prior decisions and Third Department precedent, including *Pfau*, which it found distinguishable. While the court and petitioners may disagree with it, the Board's reasoning was hardly irrational. In fact, respondents point out that *Pfau* is factually distinguishable because it involved a PERB interpretation of a provision of the Taylor Law (Civil Service Law § 209-a [1] [d]) that, unlike the NYCCBL, does not contain an express obligation to furnish any information (in disciplinary proceedings or otherwise).

Moreover, that the motion court found the Board's analysis of *Pfau* "unconvincing" is likewise insufficient to deem the Board's determination irrational. Indeed, the *Pfau* court's determination that "there is no *general* right to disclosure in a disciplinary proceeding" (*Pfau*, 69 AD3d at 1082 [emphasis added]) does not preclude the Board's finding that a *limited* right to certain information arises from the agreement and a related statute. Finally, the Third Department's rationale that "disciplinary proceedings, which involve alleged misconduct by an employee, serve a significantly different function than a

grievance" (*id.*) is inapposite here, where the agreement expressly defined a "grievance" to include an allegedly wrongful disciplinary action against an employee.

At bottom, the Board's decision cannot be said to have been "taken without sound basis in reason or regard to the facts" (*Peckham*, 12 NY3d at 431), and this Court should not interfere with the Board's rational determination that its enabling statute, in conjunction with the agreement, grants the Union a right to limited information in the context of disciplinary proceedings. In upholding the Board's decision, we are guided by the fact that the agreement specifically encompasses disciplinary proceedings within its definition of a "grievance." We take no position on whether the Board's decision would be rational if applied to municipal contracts that do not define "grievance" as including disciplinary actions.

Accordingly, the judgment of the Supreme Court, New York County (Carol E. Huff, J.), entered April 18, 2013, annulling the determination of respondent Board of Collective Bargaining of the City of New York, dated April 28, 2011, which granted an improper practice petition to the extent of compelling petitioners to disclose certain materials requested by respondent New York State Nurses Association in connection with employee disciplinary proceedings, should be reversed, on the law, without costs, the determination reinstated, and the proceeding brought pursuant to CPLR article 78 dismissed.

ANDRIAS, SAXE and RICHTER, JJ., concur.

Judgment, Supreme Court, New York County, entered April 18, 2013, reversed, on the law, without costs, the determination reinstated, and the proceeding brought pursuant to CPLR article 78 dismissed.