This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 53
In the Matter of City of New York, et al.,
                    Appellants,
          v.
New York State Nurses
Association, et al.,
                    Respondents.


          Devin Slack, for appellants.
          Abigail R. Levy, for respondents Board of Collective Bargaining of City of New York et al.
          Joseph J. Vitale, for respondents New York State Nurses Association et al.
          New York State Public Employment Relations Board; Municipal Labor Committee, amici curiae.


WILSON, J.:

          New York State Nurses Association (NYSNA, or the Union) filed an improper practice petition with the Board of Collective Bargaining of the City of New York (the Board), alleging that it had a right to information, under New York City Collective

- 1 -

Bargaining Law (NYCCBL) § 12-306 (c) (4), in connection with disciplinary proceedings brought against two nurses employed by the City's Human Resources Administration (HRA).  We agree with the Appellate Division that the City was required to furnish the information specified by the Board.

NYSNA represents more than 8,000 registered nurses, only 29 of whom are employed by HRA.  In 2009, two Union members employed by HRA were served disciplinary charges alleging that they had falsified their time records.  HRA also sent notices to the nurses, outlining the steps of the disciplinary process. Step 1 of the process was an informal conference, at the conclusion of which, if applicable, the conference holder would recommend a penalty.  If the charges were sustained at Step 1, each nurse would have the option of proceeding under Civil Service Law § 75 or following the procedures agreed upon in the collective bargaining agreement (CBA).  If the nurse chose the latter option, she would next attend a Step 2, "Grievance Hearing" before an HRA hearing officer.  The notice instructed the nurses to "bring to the [h]earing all relevant documentation in support of your appeal."

The Union then requested information from HRA, for the purposes of representing the employees in their disciplinary proceedings, and assessing compliance with the CBA.  The Union sought relevant policies and the HRA Code of Conduct, information on time-keeping, patient treatment records for the relevant

dates, witness statements, and a written statement detailing how the nurses violated the HRA Code of Conduct.  The Union also requested to question the witnesses who gave statements and the nurses' supervisors.  The City refused to provide any of the requested information or witnesses.  There is no dispute that a consistent practice exists whereby the Union has sought and received such information from the New York City Health and Hospitals Corporation (HHC), which employs the vast majority of the 8,000 union members covered by the same CBA that covers the 29 nurses employed by HRA.

In 2010, after the Step 1 conference resulted in a recommendation to terminate the nurses' employment, the Union filed its improper practice petition, alleging that HRA's failure to provide the requested information violated NYCCBL § 12-306 (a) (1) and (4).  The Board, with two members dissenting, ruled that it was an improper practice for the City to refuse to respond to certain of the information requests, finding that § 12-306 (c) (4) extends to information "relevant to and reasonably necessary to the administration of the parties' agreements, such as processing grievances" (NYSNA, 4 OCB2d 20, 10 [BCB 2011] [internal citations omitted], available at http://www.ocb-nyc.org/uploads/2015/06/4-OCB2d-20-BCB-2011-k6g.pdf).  The Board found that the Union was not, however, entitled to witness statements or a written explanation regarding the violation or the opportunity to question the identified witnesses

or supervisors, because § 12-306 (c) (4) is limited to information "normally maintained in the regular course of business."

The City then initiated this CPLR article 78 proceeding in Supreme Court to challenge the Board's determination. Supreme Court granted the City's petition and annulled the determination, concluding that the Board improperly extended the right to obtain information for grievances pursuant to contract administration to disciplinary proceedings, noting that the agreement does not explicitly require the City to provide information in disciplinary proceedings. The Appellate Division unanimously reversed, holding that the Board's decision, which was entitled to "substantial deference," had a rational basis (130 AD3d 28, 30 [1st Dept 2015]). The Appellate Division granted the City leave to appeal on a certified question of whether its order was properly made.

NYCCBL provides that it is improper practice for a public employer "to refuse to bargain collectively in good faith on matters within the scope of collective bargaining with certified or designated representatives of its public employees" (NYCCBL § 12-306 [a] [4]). The law further requires both employers and unions "to furnish to the other party, upon request, data normally maintained in the regular course of business, reasonably available and necessary for full and proper discussion, understanding and negotiation of subjects within the

scope of collective bargaining" (id. § 12-306 [c] [4]).

The Board held that section 12-306 (c) (4) extended to information "relevant to and reasonably necessary for the administration of the parties' agreements, such as processing grievances, and/or for collective negotiations on mandatory subjects of bargaining," citing several decisions of PERB, the Board's analogue for state employees (4 OCB2d 20, 9-10).  As noted by the Board, PERB "has consistently upheld the right of a union to seek information for contract administration in the context of disciplinary grievances" (id. at 10).

The City contends that the NYCCBL "does not create a freestanding information right," but requires employers and unions to exchange data that is necessary to collective bargaining only.  In its petition, the City acknowledges its statutory duty to provide information "under the rubric of contract administration and under this section of the NYCCBL" and that "grievances . . . are matters of contract administration."[1] The Appellate Division also noted, "Significantly, the City and HRA do not dispute the Board's precedent holding that the duty to furnish information already applied to 'contract administration' and 'grievances' (including potential grievances)" (130 AD3d at 34).  The City argues that grievances are entirely distinct from

---

[1] The City has also conceded that duty in other proceedings (see e.g. District Council 37, 6 OCB2d 2, 11 [BCB 2013], available at http://www.ocb-nyc.org/pdf/6%20OCB2d%202%20(BCB%202013).pdf).

disciplinary proceedings, and therefore that the information obligations required for grievances do not apply to disciplinary proceedings.  The City notes that if the Union had wanted the right to obtain information related to disciplinary proceedings, and not just grievances, it should have bargained for that to be included in the CBA.

In fact, the Union has bargained for and accomplished just that.  Article VI, section 1.D. of the CBA defines "grievance" to include: "a claimed wrongful disciplinary action taken against an employee."  Thus, by defining "grievance" to include disciplinary action, the CBA, has, as a matter of contract, incorporated as to disciplinary actions the information requirements applicable to grievances.

The City urges that "disciplinary action" in the CBA should be limited to the final action against an employee, such as suspension or termination, rather than defined to include all actions related to the disciplinary process.  The City cites Matter of Kilduff v Rochester City School District in support of its argument, in which we referred to a 30-day suspension as a "disciplinary action" (24 NY3d 505, 507 [2014]).  However, Kilduff contains no suggestion, much less a holding, that "disciplinary action" is limited to the final disposition. "Disciplinary action" may encompass a range of procedures and the results of such procedures.  When the Union filed its improper practice petition, both nurses had been charged, and the

conclusion of Step 1 of the disciplinary process was a recommendation of termination.  Further, even were we to accept the City's argument, the CBA also defines "grievance" to include a "claimed violation, misinterpretation or misapplication of the rules and regulations, written policy or orders of the Employer applicable to the agency which employs the grievant affecting terms and conditions of employment."  Here, the "claimed violation" occurred no later than the commencement of the disciplinary proceedings.

Matter of Pfau v Public Employment Relations Board, on which the City relies, is consistent with the Board's ruling here (69 AD3d 1080 [3d Dept 2010]).  In Pfau, the Appellate Division held that the Unified Court System had no obligation to provide information to employees subject to disciplinary proceedings. Pfau's holding rested on three propositions: (1) "[The Unified Court System] had taken a consistent approach [and refused] disclosure demands for over 20 years, spanning the life of several collective bargaining agreements"; (2) neither the Rules of the Chief Judge nor the collective bargaining agreement contained any right to disclosure in disciplinary proceedings; and (3) the supposed "general rule that there is no right to disclosure in disciplinary proceedings" (id. at 1082-1083). Here, the first two factors are not present.  It is undisputed that the consistent, longstanding position of HHC -- which employs 8,000 union members as compared to the 29 employed by HRA

-- has been to provide disclosure in disciplinary proceedings. Moreover, unlike the circumstances in Pfau, the CBA, by defining "grievance" to include disciplinary actions, when coupled with HRA's agreement that it is required to provide information for grievances, is not silent on the question of disclosure for disciplinary proceedings.

Finally, the City argues that disciplinary proceedings are meant to be resolved on an expedited timeline, and that the requirement to respond to burdensome information demands would bog down that process and eliminate its effectiveness. However, the great majority of nurses covered by this CBA are employed by agencies that have historically provided such information for disciplinary proceedings, and neither the record nor counsel could identify any undesirable effects that have actually occurred as a result of the provision of that information.

Accordingly, the order of the Appellate Division should be affirmed, without costs, and the certified question answered in the affirmative.

Matter of City of New York v New York State Nurses Association

No. 53

GARCIA, J.(dissenting):

The majority believes that the City has conceded that the statutory discovery obligation contained in NYCCBL § 12-306 (c) (4) extends to "grievances" (majority op at 5). The majority then concludes that, because the parties' collective bargaining agreement defines "grievance" to include "disciplinary action taken against an employee," the City's discovery obligation necessarily extends to disciplinary actions (majority op at 6). I disagree with both propositions, and therefore I respectfully dissent.[1]

I.

Initially, I question the majority's premise that the City has "acknowledge[d]" that its statutory duty under NYCCBL § 12-306 (c) (4) extends to "grievances" -- a word found nowhere in the text of the statute (majority op at 5). While the City has

---

[1] The parties disagree regarding whether a deferential or de novo standard of review applies. Viewed as a matter of "pure statutory construction" subject to "de novo" review (Matter of New York City Tr. Auth. v New York State Pub. Empl. Relations Bd., 8 NY2d 226, 231 [2007]), I believe the plain language of NYCCBL § 12-306 (c) (4) compels reversal in this case. I would, however, reach the same result under either standard. Notably, the majority is silent as to whether a deferential standard of review applies.

recognized that *the Board* has found that § 12-306 (c) (4) applies to "information relevant to and reasonably necessary for the administration of the parties' agreements, such as processing grievances" -- an interpretation this Court has never affirmed -- the City does not concede that the Board's determination is correct.  To the contrary, the City calls into question the Board's "contract administration framework," noting that it "lacks grounding in any statutory text" and that it "is not free from doubt."

Moreover, even if § 12-306 (c) (4) applies to certain "grievances," the CBA's definition of "grievance" is irrelevant to our analysis.  The parties do not dispute that the CBA does *not* provide for the discovery right that NYSNA now seeks. Rather, NYSNA contends that the source of its discovery right is statutory -- namely, NYCCBL § 12-306 (c) (4).  Contrary to the majority's holding, the scope and meaning of that statutory right is not determined with reference to the parties' private agreement.  Like most statutes, NYCCBL § 12-306 (c) (4) is broadly applicable; it governs multiple collective bargaining agreements, not just NYSNA's.  The meaning of § 12-306 (c) (4) does not -- and cannot -- vary based on the particular agreement at issue, or the precise terms that the parties "bargained for" (majority op at 6).  The terms of the CBA therefore have no place

in our statutory interpretation analysis.[2]

Nor did the Board believe that the parties' CBA somehow gave rise to a discovery right "as a matter of contract" (majority op at 6).  To the contrary, the Board determined that the CBA "does *not* explicitly obligate the parties to provide requested information in conjunction with a disciplinary process" (emphasis added).  The Board instead held that NYCCBL § 12-306 (c) (4) contains a "statutory duty" -- independent of the CBA -- that "applies to requests made in the context of disciplinary grievances."

## II.

A plain reading of the statute confirms that it was not intended to apply to the instant discovery requests.  In relevant part, NYCCBL § 12-306 (c) provides:

> "Good faith bargaining.  The duty of a public employer and certified or designated employee organization to bargain collectively in good faith shall include the obligation:
>
> (4) to furnish to the other party, upon request, data normally maintained in the regular course of business, reasonably available and necessary for full and proper discussion, understanding and negotiation of

_____

[2] The majority also states that the City has conceded "in other proceedings" that its statutory duty extends to "grievances" (majority op at 5 n 2).  But the 2013 Board decision cited by the majority postdates the parties' 2008 CBA.  The parties therefore could not have "incorporated" into the CBA an understanding, based on Board precedent, that § 12-306 (c) (4) applies to grievances, nor could they have "bargained for" the application of that discovery right to disciplinary actions (majority op at 6).

subjects within the scope of collective
bargaining"

(NYCCBL § 12-306 [c] [4]).  The statute falls within Chapter 3 of

Title 12 of the New York City Administrative Code -- a chapter

entitled, "Collective Bargaining."  Subsection (c) -- the

provision defining "[g]ood faith bargaining" -- sets forth those

rights and obligations attendant to the collective bargaining

process.  The five subdivisions of NYCCBL § 12-306 (c), then, are

designed to specify the component obligations that comprise a

public employer's statutory duty to "bargain collectively in good

faith" (NYCCBL § 12-306 [c]).  To that end, § 12-306 (c) (4)

requires the exchange of "data" that is "necessary" to facilitate

the *bargaining* process.  Put another way, § 12-306 (c) (4)

applies to discovery in connection with the formation and

negotiation of a collective bargaining agreement, as

distinguished from its implementation.[3]

---

[3] The four other subdivisions of § 12-306 (c) similarly
specify component obligations of a public employer's statutory
duty to "bargain collectively in good faith," and plainly aim to
facilitate the *bargaining* process: subdivision (1) requires
employers "to approach the negotiations with a sincere resolve to
reach an agreement"; subdivision (2) requires employers "to be
represented at the negotiations by duly authorized
representatives prepared to discuss and negotiate on all matters
within the scope of collective bargaining"; subdivision (3)
requires employers "to meet at reasonable times and convenient
places as frequently as may be necessary, and to avoid
unnecessary delays"; and subdivision (5) states that, "if an
agreement is reached," the employer must "execute upon request a
written document embodying the agreed terms, and to take such
steps as are necessary to implement the agreement" (NYCCBL § 12-
306 [c] [1]-[3], [5]).

Here, NYSNA does not seek discovery that is relevant to, or "necessary for," the collective bargaining process (NYCCBL § 12-306 [c] [4]). The requested discovery does not, for instance, pertain to the employee discipline *process* which, the City agrees, is a mandatory subject of collective bargaining. Rather, NYSNA seeks discovery in connection with two particular employee disciplinary proceedings being resolved pursuant to an already-bargained-for procedure set forth in the CBA. NYSNA's discovery requests pertain only to the substance of the underlying dispute -- the propriety of two employee terminations for falsifying time records -- and therefore do not implicate matters to be negotiated or embodied in a collective bargaining agreement.

The majority's conclusion to the contrary is also "in serious disaccord with one of the settled objectives of employee discipline" -- to "promptly resolve allegations of employee misconduct" (Matter of Pfau v Public Employment Relations Board, 69 AD3d 1080, 1082-1083 [3d Dept 2010]). Indeed, this objective is embodied in the parties' CBA, which contemplates a swift and efficient dispute resolution process. For instance, the CBA imposes narrow time limitations on each step of the disciplinary grievance procedure, culminating in an "expedited arbitration process" that "allow[s] for the prompt adjudication of grievances." The CBA does not contemplate discovery until the parties reach arbitration -- the fourth stage of the grievance

process.  Any earlier right to discovery is notably absent from the agreement.

III.

Nothing in the text of NYCCBL § 12-306 (c) (4) suggests that the statute itself confers the discovery right that NYSNA seeks.  In order to reach its conclusion that discovery is required, the majority (1) adopts the view that the statute covers "grievances" -- a term found nowhere in the text, and (2) concludes that the City therefore "bargained" away a discovery right by including disciplinary actions in the CBA's definition of a "grievance" (majority op at 5-6).  Our rules of statutory construction do not support that analysis.  Nor did the Board adopt that reasoning.

NYSNA bargained for a detailed and comprehensive dispute resolution procedure outlined with specificity in the CBA -- a process reflective of the parties' intent to resolve employee grievances efficiently and expediently.  If NYSNA desires a broader discovery right -- or any other procedural protection -- in connection with employee disciplinary proceedings, it is free to bargain for that right through the collective bargaining process.

I dissent, and would reverse the order of the Appellate Division, which dismissed the City's article 78 proceeding challenging the Board's decision.

- 6 -

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

Order affirmed, without costs, and certified question answered in the affirmative.  Opinion by Judge Wilson.  Chief Judge DiFiore and Judges Rivera, Stein and Fahey concur.  Judge Garcia dissents in an opinion.


Decided June 8, 2017