■ LITOD PAPER STOCK CORP., on Behalf of Itself and All Others Similarly Situated, Appellant, v CITY OF NEW YORK, et al., Respondents. PROLERIZED SCHIABO-NEU COMPANY, on Behalf of Itself and All Others Similarly Situated, Appellant, v CITY OF NEW YORK et al., Respondents. TEMPESTA & SON CO., INC., on Behalf of Itself and All Others Similarly Situated, Appellant, v CITY OF NEW YORK et al., Respondents.—Orders and judgments of the Supreme Court, New York County (Eugene L. Nardelli, J.), each entered on or about April 27, 1989, in three separate proceedings consolidated for purposes of this appeal, which, *inter alia,* declared that defendants were entitled to retroactively collect increased dump fees for use of the city's waste-disposal facilities, are unanimously affirmed, without costs or disbursements.

Plaintiffs, commercial waste carters, are private users of the city's waste-disposal facilities who pay "dump fees" or "tipping fees" for such use. The Department of Sanitation raised these dump fees effective October 14, 1988, pursuant to a Board of Estimate resolution permitting the private carters to pass along to their customers the entire dump fee increase. Nevertheless, CPLR article 78 proceedings were commenced by a trade association of private carters (Association) challenging both the Board of Estimate resolution and the rate determination of the Department of Sanitation. In one of these proceedings, the Association sought and was granted a stay of the October 14th implementation date for the increased dump fees and the new customer rate schedules.

During an interim period from October 21 through November 3, 1988, the statutory stay pursuant to CPLR 5519 (a) (1) was invoked by the city, and the increased fees were collected. However, when this court denied the city's motion for leave to appeal on November 3, 1988, the stay was reimposed. Thereafter, the Supreme Court decided both article 78 petitions in favor of the city. This court denied the Association's application for a stay pending appeal, and both the increased dump fees and the new customer rate schedule went into effect on December 14, 1988.

Subsequently, these present actions were commenced by three classes of licensees authorized either to operate as private carters or to use the city's waste-disposal facilities. Each plaintiff sought declaratory and injunctive relief prohibiting defendants city and its Commissioner of Sanitation from collecting the increased dumping fees for the period when the stay was in effect. In the orders appealed from herein, the IAS court, *inter alia,* declared that defendants were entitled to

collect retroactively the increased dump fees for use of the waste-disposal facilities during the period when the stay was in effect. We enjoined retroactive collection of these increased fees during the pendency of these appeals.

On appeal, the plaintiffs contend that the IAS court erred in granting defendants declaratory judgment because the city had given no notice of its intention to retroactively collect the difference between the old and the new dump fees and, in addition, because the city should be equitably estopped from collecting these retroactive fees. Lastly, the appellants contend that their actions are not barred by res judicata.

When a party has been forewarned by the acts of the legislative body of a change in a levy or tax, reliance upon the old tax is unreasonable, and retroactive imposition of a tax or fee is not, therefore, a denial of due process. "It is, of course, well settled that a tax, or, as here, a fee imposition, 'is not necessarily unconstitutional because retroactive.' *(Welch v Henry,* 305 US 134, 146.) The constitutionality of such a tax turns primarily on whether the taxpayer could have reasonably foreseen the enactment and, if he could have anticipated the tax, whether the taxpayer would have altered his behavior. *(See, United States v Darusmont,* 449 US 292, 299; *Chase Sec. Corp. v Donaldson,* 325 US 304; *Welch v Henry,* 305 US 134, *supra.)* Where the taxpayer 'was forewarned by the statute books of the possibility of such a levy', the retroactive tax will be upheld *(supra,* at 147; *see also, Milliken v United States,* 283 US 15)." *(Wittenberg v City of New York,* 135 AD2d 132, 137, *affd on opn of Sullivan, J.,* 73 NY2d 753.)

A fortiori, the collection of increased fees, properly promulgated and imposed *prospectively,* for the period that a judicially imposed stay of such collection was in effect, certainly cannot be deemed a denial of due process.

In addition, after the stay went into effect, the plaintiffs were notified that the city was "temporarily" stayed from collecting the increase. No indication was given that plaintiffs would not be responsible for the higher fees as of October 14th if the city ultimately prevailed in these actions. In fact, as noted *supra,* when the IAS court's restraining order was lifted between October 21st and November 3rd, plaintiffs were retroactively charged at the higher rate.

Section 16-203 (d) of the Administration Code of the City of New York requires that the Sanitation Commissioner notify users of the waste-disposal facilities of the first meeting of the Board of Estimate at which a resolution fixing or changing fee

schedules is considered at least 30 days prior to such meeting. Plaintiffs have not alleged that they were not so notified. Further, plaintiffs concede that notice was given in a letter dated September 27, 1988, from the Department of Sanitation, of the amounts of the increased fees and their starting date of October 14th. The record further indicates that counsel for the city argued at the October 3, 1988 hearing on the stay that a restraining order would pose a problem because of the difficulty of collecting the increased fees retroactively. Accordingly, plaintiff Litod, a member of the Association which sought the stay, had notice of the city's intention to recover the amount of increased fees for the duration of any stay. As for the plaintiffs in the other two actions, who were not members of the Association, they were certainly notified, as detailed above, of the increases from the September 27, 1988 letter. There is not showing in the record that the "temporary" stay of payment of the increased fees, during the time the court reviewed the legality of the new payment schedule, created any permanent right exempting these plaintiffs from payment of the increased fees for that period.

Estoppel would be available to plaintiffs against these governmental entities only if failure to apply the doctrine "would operate to defeat a right legally and rightfully obtained. It cannot operate to create a right" (Matter of McLaughlin v Berle, 71 AD2d 707, 708, affd 51 NY2d 917).

The unilateral conclusion by these plaintiffs that a temporary stay would somehow be transformed into a permanent exemption of increased fees for that period was founded on neither law nor logic. Whether or not plaintiffs can now recoup the increased charges for the period of the stay from their customers, the city cannot be prevented from collecting these increased fees for that period. Protection of the public fiscal powers is among those considerations which limit estoppel against a governmental entity (see, Matter of Daleview Nursing Home v Axelrod, 62 NY2d 30, 34). A contrary position would constitute an unwarranted incursion upon this public goal and would simply encourage meritless challenges to other increases in taxes or fees in attempts to garner partial exemptions from such increases.

Finally, while plaintiffs argue that principles of res judicata would not have prevented them from relitigating the issue of the validity of the increase in the dumping fee, they have conceded on appeal that the validity of the increase is not at issue here. Consequently, their arguments concerning the

applicability of res judicata are simply irrelevant. Concur—Murphy, P. J., Sullivan, Asch, Rosenberger and Wallach, JJ.