■ In the Matter of TERRILEE 97TH STREET LLC, Petitioner, v NEW YORK CITY ENVIRONMENTAL CONTROL BOARD, Respondent. [46 NYS3d 553]—

Determination of respondent New York City Environmental Control Board (ECB), dated July 25, 2013, which, insofar as challenged, imposed civil penalties totaling $5,200 for violations of the New York City Administrative Code, New York City Building Code, and New York City Zoning Resolution, unanimously modified, on the law, to dismiss notice of violation (NOV) 349-803-06K (NOV 6K) and vacate the corresponding penalty of $2,000, and the proceeding brought pursuant to CPLR article 78 (transferred to this Court by order of Supreme Court, New York County [Sholomo Hagler, J.], entered July 15, 2014), otherwise disposed of by confirming the remainder of the determination challenged, without costs.

Under the Multiple Dwelling Law as amended effective May 1, 2011 (*see* L 2010, ch 225; L 2010, ch 566 [the 2010 amendments]), none of the units in petitioner's Class A multiple dwelling may be used for occupancy periods shorter than 30 days (*see* Multiple Dwelling Law §§ 4 [8] [a]; 248 [1]; *Matter of Grand Imperial, LLC v New York City Bd. of Stds. & Appeals*, 137 AD3d 579, 579 [1st Dept 2016], *lv denied* 28 NY3d 907 [2016]). Petitioner's suggestion that the 1947 I-card (which recorded use of the subject building for "Class B sleeping rooms"), and not the most recent 1964 certificate of occupancy (CO), controls the building's lawful occupancy is meritless (*see Matter of 345 W. 70th Tenants Corp. v New York City Envtl. Control Bd.*, 143 AD3d 654, 654 [1st Dept 2016]). Petitioner's contention that it has, in effect, grandfathered rights to continue its preexisting legal use of the premises also lacks merit. The 2010 amendments extinguished the accrued rights which petitioner otherwise would have enjoyed under Multiple Dwelling Law § 366 (1) (*see Grand Imperial*, 137 AD3d at 579). Hence, ECB properly reinstated NOV 349-803-05Z, stating that the building's use "in part as a transient hotel" violated the CO (*see* Administrative Code of City of NY § 28-118.3.2).

The 2010 amendments likewise supplanted the New York

City Zoning Resolution's nonconforming use regime (*see* Multiple Dwelling Law § 120 [1]; ZR § 52-61; Senate Introducer Mem in Support, Bill Jacket, L 2010, ch 225 at 11). Since petitioner makes no claim that it attempted to comply with Multiple Dwelling Law § 120's conversion regime (and indeed asserts that it is impossible for it to meet section 120's requirements), and there is no dispute that the building's transient use violates applicable residential zoning, ECB properly reinstated NOV 349-803-07M.

Petitioner has failed to preserve its constitutional challenges to the foregoing violations (*see Melahn v Hearn*, 60 NY2d 944, 945 [1983]; *Matter of Bauer v New York State Off. of Children & Family Servs., Bur. of Early Childhood Servs.*, 55 AD3d 421, 421 [1st Dept 2008]).

ECB failed to substantiate NOV 6K, however, and that violation should be dismissed. NOV 6K asserted that the Building's front lobby exit doors, as well as "doors leading to an exit stair," violated 2008 New York City Building Code (Administrative Code of City of NY, tit 28, ch 7) § BC 1008.1.2.2, by "swinging against the flow of egress." As pertinent here, section 1008.1.2.2 requires exit doors to swing in the direction of egress for "spaces with an occupant load of 50 or more persons" (NY City Building Code [Administrative Code of City of NY, tit 28, ch 7] § BC 1008.1.2.2 [2]). There is an exception for "exit doors from lobbies serving only Group R-2 or R-3 occupancies" (NY City Building Code [Administrative Code of City of NY, tit 28, ch 7] § BC 1008.1.2.2). The building's transient use constitutes Group R-1 occupancy.

The governing 1964 CO limits occupancy of each of the building's seven floors to 28 persons, fewer than the 50-person trigger for the egress-door-swing provision. The Department of Buildings' theory in issuing NOV 6K appears to have been to add the occupancies of the upper floors (multiples of 28) in finding that the stair-top exit door and the lobby exit doors served cumulative totals of far more than 50 persons on the floor above. This stacking theory runs counter to New York City Building Code (Administrative Code of City of NY, tit 28, ch 7) § BC 1004.4, however, which provides that, "[w]here exits serve more than one floor, only the occupant load of each floor considered individually shall be used in computing the required capacity of the exits at that floor." Hence, in its amended answer to the petition, ECB conceded that, "pursuant to the 2008 Building Code, the doors that lead to the exit stairs above the lobby level do not need to swing in the direction of egress travel because each of those stories above the lobby [has] occupancies of fewer than 50 people."

This concession expressly eliminated the basis for NOV 6K insofar as it claimed that the upstairs exit doors violated the 2008 Building Code. It also eliminated any basis for the remainder of the violation, relating to the lobby exit doors. New York City Building Code (Administrative Code of City of NY, tit 28, ch 7) § BC 1004.4 does not distinguish between ground-floor and upper-floor exits, and ECB does not explain why the lobby exits should be treated differently from upper-floor stair exits.

ECB's alternative theory, that the building's transient use constitutes Group R-1 occupancy, mandating egress-swinging exit doors, regardless of the number of persons per floor, is meritless, as it would turn the exception into the rule. In other words, New York City Building Code (Administrative Code of City of NY, tit 28, ch 7) § BC 1008.1.2.2 specifies an "[e]xception" to its door-swing provisions, excluding Group R-2 and Group R-3 occupancies from having outward-swinging lobby exit doors. The exception only applies, however, if one of the four bases for door-swing egress first applies (in this case, the 50-person-per floor provision). As discussed, that provision does not apply here. Hence, there is no need to reach the door-swing exception, since the rule does not apply. Concur—Mazzarelli, J.P., Manzanet-Daniels, Feinman, Webber and Gesmer, JJ.