OPINION OF THE COURT
Wilson, J.
New York State Nurses Association (NYSNA, or the Union) filed an improper practice petition with the Board of Collective Bargaining of the City of New York (the Board), alleging that it had a right to information, under Administrative Code of the City of New York (New York City Collective Bargaining Law [NYCCBL]) § 12-306 (c) (4), in connection with disciplinary proceedings brought against two nurses employed by the City’s Human Resources Administration (HRA). We agree with the Appellate Division that the City was required to furnish the information specified by the Board.
*551 NYSNA represents more than 8,000 registered nurses, only 29 of whom are employed by HRA. In 2009, two union members employed by HRA were served disciplinary charges alleging that they had falsified their time records. HRA also sent notices to the nurses, outlining the steps of the disciplinary process. Step 1 of the process was an informal conference, at the conclusion of which, if applicable, the conference holder would recommend a penalty. If the charges were sustained at Step 1, each nurse would have the option of proceeding under Civil Service Law § 75 or following the procedures agreed upon in the collective bargaining agreement (CBA). If the nurse chose the latter option, she would next attend a Step 2, “Grievance Hearing” before an HRA hearing officer. The notice instructed the nurses to “bring to the [h] earing all relevant documentation in support of your appeal.”
The Union then requested information from HRA, for the purposes of representing the employees in their disciplinary proceedings, and assessing compliance with the CBA. The Union sought relevant policies and the HRA Code of Conduct, information on timekeeping, patient treatment records for the relevant dates, witness statements, and a written statement detailing how the nurses violated the HRA Code of Conduct. The Union also requested to question the witnesses who gave statements and the nurses’ supervisors. The City refused to provide any of the requested information or witnesses. There is no dispute that a consistent practice exists whereby the Union has sought and received such information from the New York City Health and Hospitals Corporation (HHC), which employs the vast majority of the 8,000 union members covered by the same CBA that covers the 29 nurses employed by HRA.
In 2010, after the Step 1 conference resulted in a recommendation to terminate the nurses’ employment, the Union filed its improper practice petition, alleging that HRA’s failure to provide the requested information violated NYCCBL § 12-306 (a) (1) and (4). The Board, with two members dissenting, ruled that it was an improper practice for the City to refuse to respond to certain of the information requests, finding that section 12-306 (c) (4) extends to information “relevant to and reasonably necessary to the administration of the parties’ agreements, such as processing grievances” (NYSNA, 4 OCB2d 20 at 10 [BCB 2011], available at http://www.ocb-nyc.org/ uploads/2015/06/4-OCB2d-20-BCB-20ll-k6g.pdf, cached at http://www.nycourts.gov/reporter/webdocs/4-OCB2d-20-BCB- *552 2011-k6g.pdf [citations omitted]). The Board found that the Union was not, however, entitled to witness statements or a written explanation regarding the violation or the opportunity to question the identified witnesses or supervisors, because section 12-306 (c) (4) is limited to information “normally maintained in the regular course of business.”
The City then initiated this CPLR article 78 proceeding in Supreme Court to challenge the Board’s determination. Supreme Court granted the City’s petition and annulled the determination, concluding that the Board improperly extended the right to obtain information for grievances pursuant to contract administration to disciplinary proceedings, noting that the agreement does not explicitly require the City to provide information in disciplinary proceedings. The Appellate Division unanimously reversed, holding that the Board’s decision, which was entitled to “substantial deference,” had a rational basis (130 AB3d 28, 29-30 [1st Dept 2015]). The Appellate Division granted the City leave to appeal on a certified question of whether its order was properly made (2015 NY Slip Op 87882[U] [1st Dept 2015]).
NYCCBL provides that it is improper practice for a public employer “to refuse to bargain collectively in good faith on matters within the scope of collective bargaining with certified or designated representatives of its public employees” (NYCCBL § 12-306 [a] [4]). The law further requires both employers and unions “to furnish to the other party, upon request, data normally maintained in the regular course of business, reasonably available and necessary for full and proper discussion, understanding and negotiation of subjects within the scope of collective bargaining” (id. § 12-306 [c] [4]).
The Board held that section 12-306 (c) (4) extended to information “relevant to and reasonably necessary to the administration of the parties’ agreements, such as processing grievances,” and/or for collective negotiations on mandatory subjects of bargaining, citing several decisions of the Public Employment Relations Board (PERB), the Board’s analogue for state employees (4 OCB2d 20 at 9-10). As noted by the Board, PERB “has consistently upheld the right of a union to seek information for contract administration in the context of disciplinary grievances” (id. at 10).
The City contends that the NYCCBL “does not create a freestanding informational right,” but requires employers and *553 unions to exchange data that is necessary to collective bargaining only. In its petition, the City acknowledges its statutory duty to provide information “under the rubric of contract administration and under this section of the NYCCBL” and that “grievances . . . are matters of contract administration.”* The Appellate Division also noted, “Significantly, the City and HRA do not dispute the Board’s precedent holding that the duty to furnish information already applied to ‘contract administration’ and ‘grievances’ (including potential grievances)” (130 AD3d at 34). The City argues that grievances are entirely distinct from disciplinary proceedings, and therefore that the information obligations required for grievances do not apply to disciplinary proceedings. The City notes that if the Union had wanted the right to obtain information related to disciplinary proceedings, and not just grievances, it should have bargained for that to be included in the CBA.
In fact, the Union has bargained for and accomplished just that. Article VI, section 1 (D) of the CBA defines “grievance” to include: “[a] claimed wrongful disciplinary action taken against an employee.” Thus, by defining “grievance” to include disciplinary action, the CBA, has, as a matter of contract, incorporated as to disciplinary actions the information requirements applicable to grievances.
The City urges that “disciplinary action” in the CBA should be limited to the final action against an employee, such as suspension or termination, rather than defined to include all actions related to the disciplinary process. The City cites Matter of Kilduff v Rochester City Sch. Dist. in support of its argument, in which we referred to a 30-day suspension as a “disciplinary action” (24 NY3d 505, 507 [2014]). However, Kilduff contains no suggestion, much less a holding, that “disciplinary action” is limited to the final disposition. “Disciplinary action” may encompass a range of procedures and the results of such procedures. When the Union filed its improper practice petition, both nurses had been charged, and the conclusion of Step 1 of the disciplinary process was a recommendation of termination. Further, even were we to accept the City’s argument, the CBA also defines “grievance” to include a “claimed violation, misinterpretation or misapplica *554 tion of the rules and regulations, written policy or orders of the Employer applicable to the agency which employs the grievant affecting terms and conditions of employment.” Here, the “claimed violation” occurred no later than the commencement of the disciplinary proceedings.
Matter of Pfau v Public Empl. Relations Bd., on which the City relies, is consistent with the Board’s ruling here (69 AD3d 1080 [3d Dept 2010]). In Pfau, the Appellate Division held that the Unified Court System had no obligation to provide information to employees subject to disciplinary proceedings. Pfau’s holding rested on three propositions: (1) “[The Unified Court System] had taken a consistent approach [and refused] disclosure demands in employee disciplinary matters for over 20 years, spanning the life of several collective bargaining agreements”; (2) neither the Rules of the Chief Judge nor the collective bargaining agreement contained any right to disclosure in disciplinary proceedings; and (3) the supposed “general rule that there is no right to disclosure in disciplinary proceedings” (id. at 1082-1083). Here, the first two factors are not present. It is undisputed that the consistent, longstanding position of HHC — which employs 8,000 union members as compared to the 29 employed by HRA — has been to provide disclosure in disciplinary proceedings. Moreover, unlike the circumstances in Pfau, the CBA, by defining “grievance” to include disciplinary actions, when coupled with HRA’s agreement that it is required to provide information for grievances, is not silent on the question of disclosure for disciplinary proceedings.
Finally, the City argues that disciplinary proceedings are meant to be resolved on an expedited timeline, and that the requirement to respond to burdensome information demands would bog down that process and eliminate its effectiveness. However, the great majority of nurses covered by this CBA are employed by agencies that have historically provided such information for disciplinary proceedings, and neither the record nor counsel could identify any undesirable effects that have actually occurred as a result of the provision of that information.
Accordingly, the order of the Appellate Division should be affirmed, without costs, and the certified question answered in the affirmative.

 The City has also conceded that duty in other proceedings (see e.g. District Council 37, 6 OCB2d 2 at 11 [BCB 2013], available at http://www.ocb-nyc.org/uploads/2015/06/6-OCB2d-2-BCB-2013-2w8.pdf, cached at http:// www.nycourts.gov/reporter/webdocs/6-OCB2d-2-BCB-2013-2w8.pdf).