Lexington Assoc., LLC v City of New York (2023 NY Slip Op 06335)

Lexington Assoc., LLC v City of New York

2023 NY Slip Op 06335

Decided on December 12, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 12, 2023

Before: Kern, J.P., Singh, Kennedy, Mendez, Rodriguez, JJ. 

Index No. 161257/17, 158727/20 Appeal No. 1186-1887-1188 Case No. 2021-04379, 2021-04376, 2021-04737 

[*1]Lexington Associates, LLC, et al., Plaintiffs-Appellants,
v
The City of New York et al., Defendants-Respondents.
In the Matter of Lexington Associates, LLC et al., Petitioners-Appellants,
v
Commissioner of the Department of Buildings of the City of New York et al., Respondents-Respondents.

Siri & Glimstad LLP, New York (Mason A. Barney of counsel), for appellants.
Sylvia O. Hinds-Radix, Corporation Counsel, New York (Antonella Karlin of counsel), for respondents.

Order and judgment (one paper), Supreme Court, New York County (Lyle E. Frank, J.), entered November 19, 2021, which, to the extent appealed from as limited by the briefs, in this consolidated plenary and declaratory judgment action, and hybrid CPLR Article 78 proceeding, granted in part respondents (City respondents)'s motion for summary judgment dismissing the 2017 plenary action for declaratory and injunctive relief arising from the issuance of administrative charges alleging unauthorized use of a tenement partially used for single room occupancy (SRO) in violation of the certificate of occupancy (CO) and illegal advertisements for other than permanent residence purposes, and denied plaintiffs Lexington Associates, LLC and Lexington Residence Hotel, Inc. (Lexington)'s cross-motion for summary judgment seeking declaratory and injunctive relief; and which denied Lexington's petition seeking to annul the June 18, 2020 determination of respondent New York City Office of Administrative Trials and Hearings (OATH) sustaining the charges against Lexington, brought by respondents Mayor's Office of Special Enforcement (OSE) and Department of Buildings Commissioner (DOB), as arbitrary and capricious, affected by an error of law, or a violation of due process, and related declaratory relief, and dismissed the proceeding brought pursuant to CPLR articles 30 and 78, unanimously affirmed, without costs. Appeal from judgment, same court and Justice entered December 8, 2021, unanimously dismissed, without costs, as duplicative.
Supreme Court properly granted summary judgment to the City respondents and denied Lexington's cross-motion on the claims relating to Lexington's 1940 CO and advertising its premises for permanent residence purposes. Lexington's CO list the occupancy classification as "Old Law Tenement" "Single room occupancy." The Multiple Dwelling Law, since its adoption, has classified "tenement houses," i.e., apartment buildings rented as "the home or residence of three families or more, living independently of each other," as Class A dwellings for which permanent occupancy was generally required "as a rule" (L 1929 ch 713; see former Multiple Dwelling Law § 4[4], [10]). Class B multiple dwellings on the other hand, allowing transient occupancy "as a rule," included, among other things, "hotels, lodging houses, rooming houses, boarding houses, [and] furnished-room houses" (former Multiple Dwelling Law § 4[5]).
The Pack Law of 1939 subsequently allowed "any existing class A multiple dwelling or any part thereof" to be used for "single room occupancy . . . provided such class A multiple dwelling or such portion or portions thereof being so used shall comply and conform with all the provisions and requirements of this section" and to other Multiple Dwelling Law provisions previously applicable to the building (L. 1939 ch. 769 § 5, codified as Multiple Dwelling Law § 248[1]). The Pack Law defined an SRO as, "an occupancy by one or two persons of a single [*2]room, or of more than one room which are joined together, separated from all other rooms within an apartment, in a multiple dwelling, so that the occupant or occupants thereof reside within an apartment separately and independently of the other occupant or occupants of the same apartment"(L. 1939 ch. 769 § 2, codified as Multiple Dwelling Law § 4[7]). The Pack Law was focused on upgrading the safety and sanitary conditions of apartments that had already been converted to SRO use prior to its passage (former §§ 248[2]-[15]), and it prohibited the lease of SROs for less than a week (former Multiple Dwelling Law § 248[16]). It also classified some rooming houses, lodging houses, and furnished room houses, normally Class B dwellings, as also "a class A multiple dwelling used or let for single room occupancy which conforms to [Multiple Dwelling Law § 248]" (L 1939 ch 769 § 2, codified as Multiple Dwelling Law § 4[7]). The Governor, in approving the legislation, adopted the Mayor's opinion that the illegal conversion of apartments should be legalized while "insisting upon adequate safety and sanitary safeguards," instead of removing "the hundreds of thousands of . . . poor persons from dwellings available to them within the narrow limits of their ability to pay" (L 1939 ch 769, Governor's Bill Jacket at 83).
Lexington's CO legalized the conversion of its 16-apartment tenement under the Pack Law, retaining 8 full apartments and authorizing 103 SRO units. This Court previously found that a similar CO, indicating "New Law Tenement Single Room Occupancy," provides "by implication[] that the building is a class A multiple dwelling," because tenements are Class A multiple dwellings (City of New York v 330 Cont., LLC, 60 AD3d 226, 228 n 1 [1st Dept 2009], citing Multiple Dwelling Law § 4[8]). The same holds true here for Lexington's CO, which also does not include a notation for either Class A or Class B (NY City Charter § 645[b][3][e]).
Lexington relies on its 1940 conversion application, in which it proposed to have "Class B, Single Room Occupancy (Pack Bill)," but it identifies no provision of the Pack Law authorizing conversion to Class B transient occupancy in addition to conversion from full apartments to SRO use. Lexington also concedes that its I-card cannot "amend or supersede the certificate of occupancy or . . . determine the legality of an existing use or occupancy" (Matter of 345 W. 70th Tenants Corp. v New York City Envtl. Control Bd., 143 AD3d 654, 654 [1st Dept 2016] [internal quotation marks omitted]). Other historical documents referenced, such as leases, indentures, and representations made in its 1941 plumbing permit application, have no bearing on the legality of occupancy.
Because the tenement building is a Class A multiple dwelling, under the Multiple Dwelling Law amendments that became effective in May 2011 (L 2010 ch 225; L 2010 ch 566 § 3 [amending effective date]), "none of the units in [Lexington]'s Class A multiple dwelling may [*3]be used for occupancy periods shorter than 30 days" (Matter of Terrilee 97th St. LLC v New York City Envtl. Control Bd., 146 AD3d 716, 716 [1st Dept 2017], citing Multiple Dwelling Law §§ 4[8][a], 248[1]; Administrative Code of the City of New York § 28-210.3). Indeed, any "grandfathered rights to continue its preexisting legal use of the premises" for partial transient occupancy no longer apply, as the Legislature "extinguished the accrued rights which petitioner otherwise would have enjoyed" (Matter of Terrilee, 146 AD3d at 716). It follows that the Class A advertising law, passed in 2016, precludes Lexington from advertising its units for other than permanent residence purposes (see Multiple Dwelling Law § 121; Administrative Code § 27-287.1).
Supreme Court also properly granted summary judgment dismissing Lexington's preclusion and due process claims, asserted based on a 2016 OATH determination dismissing a prior charge of violating the CO. In that administrative proceeding, OATH held that the "Old Law Tenement" portion of the CO applies to the eight apartments and the "single room occupancy" description allows Class B occupancy of the SROs.
First, as to res judicata, even assuming that the April 2017 summons charging occupancy in violation of the CO arises from the same transaction or occurrence or series of transactions (see Simmons v Trans Express Inc., 37 NY3d 107, 111 [2021]), we find that precluding the DOB from charging this violation, and barring OATH from adjudicating alleged CO violations consistent with this Court's precedent, would be inconsistent with the mandate to enforce the Multiple Dwelling Law and building code consistently against all Class A tenements (see Matter of Josey v Goord, 9 NY3d 386, 390 [2007] [before applying "res judicata to an administrative decision . . . it is necessary to determine whether to do so would be consistent with the function of the administrative agency involved, the peculiar necessities of the particular case, and the nature of the precise power being exercised"]). Otherwise, Lexington would be afforded "treatment different from that given to other [tenement owners] of the same class" by allowing transient occupancy in the building to continue despite the clear statutory mandate to the contrary (C.I.R. v Sunnen, 333 US 591, 599 [1948]).
Second, "collateral estoppel does not preclude" relitigating whether Lexington's CO allows Class B transient occupancy in the SRO units, since this is a "pure question of law" (American Home Assur. Co. v International Ins. Co., 90 NY2d 433, 440 [1997]). Alternatively, we find that our decision in Matter of Terrilee postdating OATH's prior determination was "a judicial declaration intervening between the two proceedings" that "so change[d] the legal atmosphere as to render the rule of collateral estoppel inapplicable" (C.I.R., 333 US at 600; accord Matter of Group Health v Tax Commn. of City of N.Y., 93 AD2d 730, 731 [1st Dept 1983]).
Third, the OATH rule requiring [*4]parties to litigate all issues before the hearing officer and preserve the defense of prior adjudication for the OATH Appeals Unit does not violate due process (48 RCNY 3-14). "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim to entitlement" (Olim v Wakinekona, 461 US 238, 250 [1983]). Although Lexington legitimately argued that the prior OATH adjudication precluded the 2017 charges, it was not deprived of the right to assert this defense or of its ability to rent out and advertise rooms for transient use without a hearing (see Board of Regents of State Colleges v Roth, 408 US 564, 569-570 [1972]; Mullane v Central Hanover Bank & Trust Co., 339 US 306, 314 [1950]).
In the special proceeding, Supreme Court properly denied article 78 and declaratory relief. OATH's decision to reject Lexington's "prior adjudication" defense was not arbitrary and capricious or affected by an error of law (CPLR 7803[3]; Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]; see 48 RCNY 3-14). The OATH decision found, based on its interpretation of its own regulation and relying on its administrative precedent, that Lexington's use of the premises for transient occupancy was a continuing violation for which res judicata does not apply (DOB v Lexington Associates, LLC, Appeal No. 2000325, at 5 [June 18, 2020], citing NYC v William Newmark, Appeal No. 1701005, at 2 [Nov. 17, 2017]). This interpretation was "not irrational or unreasonable" and "should be upheld" (Matter of City of New York v New York State Nurses Assn., 130 AD3d 28, 34 [1st Dept 2015], affd 29 NY3d 546 [2017] [internal quotation marks omitted]; see e.g. Restatement [Second] of Judgments § 26[1][e]). Nor was it arbitrary and capricious or an error of law for OATH to hold that this Court's Matter of Terrilee decision changed the legal landscape regarding transient use of SROs in a Class A tenement building, rendering collateral estoppel inapplicable (compare Restatement [Second] of Judgments § 28 comment c, illustration 3).
We further reject Lexington's contention that OATH made its decision "without regard to the facts" (Matter of Voutsinas v Schenone, 166 AD3d 634, 636 [2d Dept 2018]; accord Matter of Pell, 34 NY2d at 231). The undisputed facts were clear from a review of the hearing transcript and the Hearing Officer's decision, as well as this Court's Matter of Terrilee decision and OATH's prior decision that was inconsistent therewith.
Finally, as to the enforcement of the Class A advertising law, we find no error in OATH's determination that the inspector, whose testimony was not contravened, was employed by the DOB and also assigned to OSE as allowed by Mayoral executive orders, such that OSE was properly the enforcement agency (see Multiple Dwelling Law § 121; Administrative Code § 27-287.1). Moreover, we note that [*5]the administrative appeal of the advertising-related decisions by the Hearing Officer was submitted by two attorneys, one employed by the DOB Administrative Enforcement Unit and the other a Special Assistant Corporation Counsel who represented OSE and the DOB at the hearing.
We have considered Lexington's remaining contentions and find them unavailing.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 12, 2023