**McCrain v Metropolitan Transp. Auth.**

2025 NY Slip Op 31394(U)

April 21, 2025

Supreme Court, New York County

Docket Number: Index No. 160051/2019

Judge: Nicholas W. Moyne

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     **HON. NICHOLAS W. MOYNE**

*Justice*

PART                41M

-------------------------------------------------------------------------------X

SCOTT MCCRAIN,

Plaintiff,

- v -

METROPOLITAN TRANSPORTATION AUTHORITY,
METROPOLITAN TRANSPORTATION AUTHORITY
DEFINED BENEFIT PENSION PLAN

Defendant.

-------------------------------------------------------------------------------X

INDEX NO.            160051/2019

MOTION DATE         06/24/2022

MOTION SEQ. NO.            002

**DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46

were read on this motion to/for                    ARTICLE 78 (BODY OR OFFICER)                    .

## PROCEDURAL HISTORY

Petitioner commenced the instant proceeding on October 16, 2019, seeking a declaratory judgment directing respondents to credit his three years and eight months of service as a custodian with the Metro-North Commuter Railroad Company (Metro-North) toward his pension, which he subsequently earned as a police officer for the Metropolitan Transportation Authority's Police Department (MTA PD). After this court granted respondents' prior motion to the extent of converting this action to an Article 78 proceeding, petitioner filed the instant petition challenging defendants' determination that his time employed as a custodian would not apply toward his pensionable service credit time.

## BACKGROUND FACTS

Respondent Metropolitan Transportation Authority (MTA) is a state public benefit corporation (NYSCEF DOC No. 36, Meehan aff at 1, ¶ 2) created by the Public Authorities Law § 1263 (1) (a). The MTA "maintains and operates a Police Department (MTA PD) [which]

**160051/2019   MCCRAIN, SCOTT vs. METROPOLITAN TRANSPORTATION**
**Motion No.  002**

**Page 1 of 15**

[* 1]

employs Police Officers" (NYSCEF Doc No. 33, petition ¶ 10) as authorized by Public Authorities Law § 1266-h (1). Metro-North is "a state public benefit corporation that was organized by the MTA pursuant to its statutory powers . . . [and] is a subsidiary of MTA" (NYSCEF DOC No. 36, Meehan aff at 1, ¶ 2). Respondent Metropolitan Transportation Authority Defined Benefit Pension Plan (the pension plan or the plan) is a pension plan the MTA provides pursuant to the Public Authorities Law § 1266-h (4), (5) (*see* NYSCEF DOC No. 36, Meehan aff at 1, ¶ 2). The Board of Managers (the Board) administers the plan (NYSCEF Doc 36, Meehan aff at 3, ¶ 8; NYSCEF Doc No. 37, exhibit A at 40, § 6.02).

On January 10, 1994, petitioner began working as a custodian with Metro-North (NYSCEF Doc No. 33, petition ¶ 10; NYSCEF DOC No. 36, Meehan aff at 1, ¶ 4). While employed as a Metro-North custodian, petitioner participated in the Metro-North Commuter Railroad Company Defined Contribution Pension Plan (the Vanguard plan[1] or the contribution plan) (NYSCEF Doc No. 33, petition ¶ 13; NYSCEF Doc No. 36, Meehan aff at 2, ¶ 4). Under this plan, Metro-North contributed 3% of employees' salaries to their individual participant accounts, which the employees could opt to match (NYSCEF Doc No. 33, petition at ¶ 13; NYSCEF Doc No. 36, Meehan aff at 2, ¶ 4). Regardless of whether an employee elected to match, Metro-North placed its contributions into the Vanguard plan for the employee's benefit (*id.*) and "the balance in the account [was] distributed . . . at retirement or upon death" (NYSCEF Doc No. 36, Meehan aff at 2, ¶ 4).

On August 27, 1997 or August 28, 1997, without a break in service, petitioner became a police officer in the Metro-North Police Department (NYSCEF Doc No. 33, petition at ¶ 14; NYSCEF Doc No 36, Meehan aff at 2, ¶ 5). As a Metro-North police officer, petitioner

---

[1] Employees referred to the contribution plan as the Vanguard plan "because its assets were held at one time in trust at The Vanguard Group" (NYSCEF Doc No. 36, Meehan aff at 2, ¶ 4).

**160051/2019   MCCRAIN, SCOTT vs. METROPOLITAN TRANSPORTATION**
**Motion No.  002**

**Page 2 of 15**

remained enrolled in the Vanguard plan (NYSCEF Doc No. 33, petition at ¶ 14; NYSCEF Doc No 36, Meehan aff at 2, ¶ 5). As such, his contributions did not change, and his other employment benefits allegedly remained undisturbed (NYSCEF Doc No. 33, petition at ¶¶ 14-15; NYSCEF Doc No 36, Meehan aff at 2, ¶ 5).

In January 1998, the Metro-North Police Department and the Long Island Rail Road (LIRR) Police Department merged and formed the MTA PD (NYSCEF Doc No. 33, petition at ¶ 16; NYSCEF Doc No 36, Meehan aff at 2, ¶ 5). Public Authorities Law § 1266-h, which authorized the merger, required the MTA to provide its own twenty-year retirement program to MTA PD's police force or to join the New York State Police and Fire Retirement System (*id.*; NYSCEF Doc No 36, Meehan aff at 2, ¶ 6). The MTA elected to create its own twenty-year retirement program, which required MTA PD police officers to contribute to the plan "for the equivalent of twenty (20) years of credited police service" (NYSCEF Doc No. 33, petition ¶ 19; *see* NYSCEF Doc No. 36, Meehan aff at 3, ¶ 7). Under the pension plan, the benefit at retirement was calculated according to a formula based on police officers' final average salaries and years of credited police service (NYSCEF Doc No. 36, Meehan aff. at 3, ¶ 7).

After the merger, the MTA PD continued to employ petitioner as a police officer until he retired on June 26, 2019 (NYSCEF Doc No. 33, petition at 6, ¶ 20). Petitioner contends that although respondents transferred the funds in his Vanguard plan into the pension plan after the merger, they failed to credit his time employed as a custodian in contravention of Public Authorities Law § 1266-h (7), which, according to petitioner, provided that service members "would not lose any of the rights, privileges and status previously earned within a pension or retirement system" (NYSCEF Doc No. 33, petition at 6, ¶ 16). According to petitioner, he has lost approximately $10,000 per year as the result of respondents' alleged miscalculation of his

160051/2019   MCCRAIN, SCOTT vs. METROPOLITAN TRANSPORTATION
Motion No.  002

Page 3 of 15

3 of 15

[* 3]

pensionable service credit time (NYSCEF Doc No. 33, petition at ¶ 28).

Respondents object that they were under no obligation to credit petitioner's non-uniformed service with Metro-North and that they informed petitioner in writing on at least two occasions that his credited service began when he became a police officer in 1997 (NYSCEF Doc No. 36, Meehan aff at 7-9, ¶¶ 14-19). Respondents oppose the petition because their determination not to credit petitioner's time employed as a custodian was not arbitrary and capricious; petitioner improperly interposed an estoppel claim against a municipality; petitioner has failed to exhaust administrative remedies; and this Article 78 proceeding is time-barred (NYSCEF Doc No. 35, affirmation of respondents' counsel at 1-2).

## DISCUSSION

*Article 78 Standard*

In a challenge to an administrative determination pursuant to CPLR 7803 (3), judicial review is limited to an inquiry into whether the challenged determination had a rational basis, or whether the action was arbitrary and capricious or affected by an error of law (CPLR 7803 [3] ["The only questions that may be raised in a proceeding under this article are . . . whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion"]; *see Matter of Wooley v New York State Dept. of Correctional Servs.*, 15 NY3d 275, 280 [2010], *rearg denied* 15 NY3d 841 [2010]; *Matter of Peckham v Calogero*, 12 NY3d 424, 431 [2009]; *Matter of Gilman v New York State Div. of Hous. & Community Renewal*, 99 NY2d 144, 149 [2002]). An agency determination is "arbitrary and capricious when it is taken without sound basis in reason or regard to the facts" (*Peckham*, 12 NY3d at 431; *Matter of Heintz v Brown*, 80 NY2d 998, 1001 [1992]). Rational basis exists where there is evidence in the record to support an administrative agency's determination (*see*

**160051/2019   MCCRAIN, SCOTT vs. METROPOLITAN TRANSPORTATION**                          **Page 4 of 15**
**Motion No. 002**

4 of 15

*Matter of Nelson v Roberts*, 304 AD2d 20, 23 [1st Dept 2003]; *Matter of Pell v Bd. of Ed. of Union Free School Dist. No. 1 of Towns of Scarsdale and Mamaroneck, Westchester County*, 34 NY2d 222, 231 [1974]).

<u>*Analysis*</u>

*A. Timeliness of the instant Article 78 proceeding*

At the outset, the court considers the potentially dispositive issue of this proceeding's timeliness. In respondents' answer in opposition to the petition, they argue that the instant Article 78 proceeding should be dismissed as untimely because the agency's determination became final and binding on petitioner, at the very latest, on May 9, 2019. In support of this argument, respondents rely on a May 9, 2019 letter addressed to petitioner. The letter informed petitioner that upon making elections based on the retirement benefit estimate sheets attached to the letter and retiring, his elections would become final, and he would not be able to change them. Respondents claim that this letter constituted a final and binding determination and that petitioner's failure to commence an Article 78 proceeding within four months of May 9, 2019, precluded him from maintaining the instant action. Although petitioner does not challenge this argument in his reply, the facts are not in dispute.

Pursuant to CPLR 217 [1], "a proceeding against a body or officer must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner." An agency determination "generally becomes binding when the aggrieved party is 'notified'" (*Matter of Village of Westbury v Department of Transp. of State of N.Y.*, 75 NY2d 62, 72 [1989] [citations omitted]; *Matter of Ijbara v City of New York*, 300 AD2d 251, 254 [1st Dept 2002]). The Court of Appeals has additionally held that

"[a]n administrative determination becomes 'final and binding' when two requirements are met: completeness (finality) of the determination and exhaustion of administrative

**160051/2019   MCCRAIN, SCOTT vs. METROPOLITAN TRANSPORTATION**          **Page 5 of 15**
**Motion No.  002**

5 of 15

remedies. First, the agency must have reached a definitive position on the issue that inflicts actual, concrete injury and second, the injury inflicted may not be ... significantly ameliorated by further administrative action or by steps available to the complaining party" (*Walton v New York State Dept. of Correctional Services*, 8 NY3d 186, 194 [2007] [internal quotation marks and citations omitted]; *Matter of Center for Discovery, Inc. v NYC Dept. of Educ.*, 162 AD3d 83, 86 [1st Dept 2018]).

Where a government body creates ambiguity and uncertainty as to whether its determination is final, "the courts should resolve any ambiguity created by the public body against it" (*Mundy v Nassau County Civ. Serv. Commn.*, 44 NY2d 352, 358 [1978] [citation omitted]; *Matter of Biondo v New York State Bd. of Parole*, 60 NY2d 832, 834 [1983] ["[F]or the purposes of the commencement of the statutory period, the petitioner cannot be said to be aggrieved by the mere issuance of a determination when the agency itself has created an ambiguity as to whether or not the determination was intended to be final"]; *see Matter ofHasberry*, 61 AD3d 523, 523 [1st Dept 2009]).

The relevant portions of the May 9, 2019 letter informed petitioner that, as per his request, the Service Pension estimates were enclosed (NYSCEF Doc No. 41, exhibit E) and that "[u]pon retirement and electing an option once the form has been filed, you <u>cannot</u> change your option selection after your retirement date" (*id.* [emphasis in original]). According to the letter, however, the Board could grant an extension for a period of up to 60 days after the retirement date based on reasonable cause (*id.*). By its own terms, the letter informed petitioner that his pension benefits would not be final until he made his elections and retired. The letter referenced estimates, not final elections, and did not address the dispute regarding petitioner's date of hire. The body of the letter was silent regarding petitioner's date of hire. Based on these facts, the May 9, 2019 letter failed to apprise petitioner of a final and binding determination regarding his pensionable service credit.

**160051/2019   MCCRAIN, SCOTT vs. METROPOLITAN TRANSPORTATION**
**Motion No.  002**

**Page 6 of 15**

Moreover, the service pension estimate sheets attached to the May 9, 2019 letter listed petitioner's date of hire as January 10, 1994. Despite respondents' contentions, the letter failed to notify petitioner that the date of hire respondents would ultimately use to calculate his pensionable service credit would be August 28, 1997. Thus, there was nothing to appeal until petitioner retired because the attachments to the May 9, 2019 letter contained a date of hire petitioner believed to be the accurate date for the purposes of calculating his pension benefit.

The May 9, 2019 letter created ambiguity concerning petitioner's date of hire and, consequently, his pensionable service credit. The agency previously sent petitioner a letter dated April 20, 2018, informing him that, upon review of his employee contribution history, contributions to his pension were not properly withheld from his earnings for 72 pay periods and that they would have to be recouped (NYSCEF Doc No. 40, exhibit D).[2] The attachments to the April 20, 2018 letter, detailing petitioner's contributions, listed his MTA Police Date of Hire as August 28, 1997 (*id.*), whereas the May 9, 2019 letter contained pension estimate information sheets that listed petitioner's date of hire as January 10, 1994 (NYSCEF Doc No. 41, exhibit E). Resolving this ambiguity against the respondents (*Mundy*, 44 NY2d at 358), petitioner did not become aggrieved, and the statute of limitations did not begin to run against him, until he actually retired on June 26, 2019 and his elections to his pension benefit became final (*see id.*; *see also Matter ofHasberry*, 61 AD3d at 523). Petitioner commenced this proceeding on October 16, 2019, which fell within the four-month limitations period contemplated by CPLR 217 (1) (*see* CPLR 304; *Matter of Grant v Senkowski*, 95 NY2d 605, 608 [2001]).

### B. Exhaustion of remedies

This court also rejects respondents' argument that this proceeding should be dismissed

---

[2] In its prior decision dated May 26, 2022, this court determined that the letter dated April 20, 2018 did not apprise petitioner of a final and binding determination as to his pension benefits (NYSCEF Doc No. 20).

**160051/2019   MCCRAIN, SCOTT vs. METROPOLITAN TRANSPORTATION**   **Page 7 of 15**
  **Motion No.  002**

[* 7]

because petitioner failed to exhaust his administrative remedies. In their opposition, respondents argue that, at the very least, the May 9, 2019 letter "was clear that it was a final calculation of McCrain's benefits if he were to retire without taking any other action" (NYSCEF Doc No. 35, affirmation of respondents' counsel at 9). Respondents insist that petitioner never attempted to appeal the May 9, 2019 letter, despite having the right to do so and, instead, accepted its terms when he applied to retire on May 24, 2019 (*id.* at 9). Petitioner counters that he made numerous efforts to resolve the issue of his pension service credit and his paycheck deductions prior to his retirement (NYSCEF Doc No. 42, affirmation of petitioner's counsel at 2, ¶ 7 & 4, ¶ 14). Petitioner contends that he sent multiple emails regarding this issue that went unanswered (NYSCEF Doc No. 42, affirmation of petitioner's counsel at 4, ¶ 14).

The Court of Appeals has held that "[i]t is hornbook law that one who objects to the act of an administrative agency must exhaust available administrative remedies before being permitted to litigate in a court of law" (*Watergate II Apts. v Buffalo Sewer Auth.*, 46 NY2d 52, 57 [1978]). However, it is also deeply held that "[t]he exhaustion rule ... need not be followed, for example, when an agency's action is challenged as either unconstitutional or wholly beyond its grant of power, or when resort to an administrative remedy would be futile or when its pursuit would cause irreparable injury" (*Matter of Community Related Services, Inc. (CRS) v Novello*, 41 AD3d 323, 323 [1st Dept 2007] [citation omitted]).

Respondents rely heavily on the plan document in support of their opposition (NYSCEF Doc No. 36, Meehan aff at 3-6, ¶¶ 8-12, 17, & 8, ¶ 19; NYSCEF Doc No. 37, Exhibit A, section 11.9.01) but fail to point to a section that sets forth petitioner's rights to appeal agency determinations generally. The section of the plan document titled "Appeals" states in relevant part:

**160051/2019   MCCRAIN, SCOTT vs. METROPOLITAN TRANSPORTATION**
**Motion No. 002**

**Page 8 of 15**

[* 8]

"In the event an application for a benefit pursuant to the provisions of the Plan is denied, the applicant shall be notified in writing of the denial by certified mail, return receipt requested, which notice shall set forth the reasons(s) for denial and the applicable provisions(s) of the Plan or the interpretation thereof adopted by the Board of Managers." (NYSCEF Doc No. 26, exhibit A at 125).

The appeals section does not designate an appeals process for agency determinations as a whole but, by its plain language, limits the process to challenges of denials of applications for benefits. It also mandates that the notice set forth the reasons for denials and the applicable provisions of the plan or the interpretations adopted by the Board.

Here, petitioner has not alleged that his retirement benefit was denied. The parties agree that petitioner has been receiving a pension (NYSCEF Doc No. 35, affirmation of respondents' counsel at 8; NYSCEF Doc No. 42, affirmation of petitioner's counsel at 3). Petitioner's claim is that respondents have improperly declined to credit him for his time employed as a Metro-North custodian, which he accumulated prior to becoming a Metro-North Police Officer in August, 1997 (NYSCEF Doc No. 42, affirmation of petitioner's counsel at 3). Respondents have not cited any language in the letter, in the plan document, or in any provision of Public Authorities Law § 1266-h that describes petitioner's rights to appeal agency determinations that do not fall into the category of benefit denials (*see Matter of Barrett v Morgenthau*, 74 NY2d 907, 909 [1989] [where a District Attorney failed to advise petitioner of the availability of an administrative appeal and failed to demonstrate that procedures for such an appeal had been established, "he cannot be heard to complain that petitioner failed to exhaust his administrative remedies."]).

Further, the May 9, 2019 letter failed to inform petitioner of the section of the plan, or respondents' interpretation thereof, that formed the basis of respondents' determination as required by the appeals section of the plan document. For the foregoing reasons, petitioner's

**160051/2019   MCCRAIN, SCOTT vs. METROPOLITAN TRANSPORTATION**
**Motion No.  002**

**Page 9 of 15**

9 of 15

[* 9]

injury could not be "significantly ameliorated by further administrative action or by steps available" to him (*Walton*, 8 NY3d at 194; *see Center for Discovery, Inc.*, 162 AD3d at 86), and he has properly interposed this Article 78 petition as directed by this court in its prior decision dated May 26, 2022.

*C. Respondents' determination and the Article 78 rational basis standard*

Lastly, having decided that this Article 78 proceeding is properly presented before the court, it next considers whether respondents' determination not to credit petitioner's civilian service as a custodian with Metro-North was arbitrary and capricious or had a rational basis in the applicable laws and rules. Respondents cite the plan document and contend that the plan, by its terms, only counts Metro-North police service toward its credited retirement time. Respondents maintain that even if the terms of the program were ambiguous on this issue, interpreting its own policy falls within the Board's discretion pursuant to the plan document. Respondents insist that limiting credited service to police service has a rational basis because the retirement program provides a generous benefit intended to incentivize individuals to "join the police force early and commit to it for a full twenty years" (NYSCEF Doc No. 35, affirmation of respondents' counsel at 5).

Respondents further argue that Public Authorities Law § 1266-h purposefully excluded non-police service as the result of labor negotiations with petitioner's union. Respondents argue that they have not violated the guarantees of Public Authorities Law § 1266-h (7), which provides that prior rights, privileges, or status should survive the effects of decisions and determinations made in accordance with Public Authorities Law § 1266-h, as long as the benefit of those rights, privileges, or status is greater than the benefit imposed by the MTA. Respondents contend that they have provided a greater benefit to petitioner since the retirement program

160051/2019   MCCRAIN, SCOTT vs. METROPOLITAN TRANSPORTATION
Motion No. 002

Page 10 of 15

[* 10]

guarantees a fixed benefit based on years of service and a police officer's final average salary, as opposed to a plan where employee contributions determine the benefit amount.

Petitioner does not specifically address respondents' contentions but, instead, interposes an estoppel argument based on the fact that respondents initially stopped withholding contributions from his earnings in January 2014. According to petitioner, this evinces that prior to seeking to recoup contributions as outlined in the April 20, 2018 letter, respondents conceded that he had reached twenty years of service toward the retirement program in January 2014. Respondents challenge this argument and characterize this as mere error, which the agency is required to correct since the plan "must be administered in accordance with its terms" (NYSCEF Doc No. 36, Meehan aff at 8, ¶ 17).

It is well settled that "[w]here a rational basis exists for an agency's action, a court may not substitute its judgment for that of the agency, and the agency's determination, acting pursuant to legal authority and within its area of expertise, is entitled to deference" (*Roberts v Gavin*, 96 AD3d 669, 671 [1st Dept 2012]; *Matter of Roberts v Gavin*, 96 AD3d 669, 671 [1st Dept 2012] ["Where a rational basis exists for an agency's action, a court may not substitute its judgment for that of the agency"]; *Awl Indus., Inc. v Triborough Bridge & Tunnel Auth.*, 41 AD3d 141, 142 [1st Dept 2007] ["[A] 'court may not substitute its judgment for that of the agency responsible for making the determination, but must ascertain only whether there is a rational basis for the decision or whether it is arbitrary and capricious'"] [citations omitted]). Moreover, the courts have consistently held that "the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld'" (*Matter of City of New York v New York State Nurses Assn.*, 130 AD3d 28, 34 [1st Dept 2015] [citation omitted], *affd* 29 NY3d 546 [2017]; *see also Matter of Tommy & Tina, Inc. v Department of*

160051/2019   MCCRAIN, SCOTT vs. METROPOLITAN TRANSPORTATION
Motion No.  002

Page 11 of 15

11 of 15

*Consumer Affairs of City of N.Y.*, 95 AD2 724, 724 [1st Dept 1983] [citation omitted], *affd* 62 NY2d 611 [1984]).

Here, the plan document gives the Board the authority to

"take all actions and make all decisions with respect to the eligibility for, and the amount of, benefits payable under the Plan and . . . interpret and apply rules, regulations and policies necessary to administer the Plan in accordance with its terms; . . . decide questions, including legal or factual questions, relating to the calculation and payment of benefits under the Plan; [and] . . . process, and approve or deny, benefit claims and rule on any benefit exclusions" (NYSCEF Doc No. 37, exhibit A at 40, section 6.02; NYSCEF Doc No. 36, Meehan aff at 4, ¶ 8).

The Board exercised its discretion to interpret and apply plan rules in accordance with the provisions of the plan document. This determination fell squarely within the scope of the Boards authority, and this court declines to set it aside.

Additionally, respondents' determination that petitioner's time employed as a custodian should not be credited toward his pensionable service credit has a rational basis since, according to the plan document, the types of credited police service listed in the "Credited Police Service" section include, among others, service "in the Uniformed Authority Police Force"; service by participants who were LIRR police officers; service by participants who were Metro-North police officers; service by participants who were SIRTOA police officers; service as police officers in any MTA-affiliated agency, subject to certain conditions; and military service rendered during period of military conflict (NYSCEF Doc No. 37, exhibit A, at 50-52). The plan document does not include a section for credited non-uniformed service. Petitioner has not pointed to any relevant caselaw, statutory authority, or agency rule that would demonstrate that respondents were required to credit his civilian service as a custodian (see *Ahmed v Metropolitan Transp. Auth.*, 2024 NY Slip Op 30679[U], *4 [Sup Ct, NY County 2024], *affd* 233 AD3d 429 [1st Dept 2024]). For these reasons, respondents' construction of the plan document's provisions

**160051/2019   MCCRAIN, SCOTT vs. METROPOLITAN TRANSPORTATION**
**Motion No.  002**

**Page 12 of 15**

12 of 15

[* 12]

determining that non-uniformed civilian service should not be credited toward a police officer's retirement benefit was not arbitrary and capricious and may not be set aside (*see Matter of Rubenstein v Metropolitan Transp. Auth.*, 145 AD3d 453, 454 [1st Dept 2016]).

Further, petitioner has not demonstrated that respondents violated Public Authorities Law § 1266-h (7). The retirement benefit respondents supplied is a defined benefit plan calculated using a formula based on an MTA PD police officer's number of years of service and the final average salary, which would "provide him or her with a retirement allowance equal to one-half of his or her Final Average Salary" upon retirement or upon turning 62 years of age (NYSCEF Doc No. 35, affirmation of respondents' counsel at 6, NYSCEF Doc No. 36, Meehan aff at 4, ¶ 9; NYSCEF Doc No. 37, exhibit A, at Section 10.3.02). In contrast, the Vanguard plan relied on employer contributions and would only pay a retirement benefit "relative to the contributions made" by the employer or employee (NYSCEF Doc No. 35, affirmation of respondents' counsel at 6). For this reason, petitioner has not demonstrated that his retirement benefit was diminished, suspended, or abolished under the meaning of Public Authorities Law § 1266-h (7) as there is a reasonable basis for respondents' argument that the pension plan provided a greater benefit than the Vanguard plan.

To the extent that respondents were required to credit petitioner's contributions to the Vanguard plan, the agency transferred $13,000 from that plan to the pension plan as petitioner's initial participant balance (NYSCEF Doc No. 36, Meehan aff at 6, ¶ 12; NYSCEF Doc No. 42, affirmation of petitioner's counsel at 3, ¶ 12; NYSCEF Doc No. 37, exhibit A at 50 & 154). Petitioner has not cited a section of the plan document that confers an additional right to apply non-uniformed service time to his pensionable service credit.

The court also rejects petitioner's argument that respondents should be estopped from

**160051/2019   MCCRAIN, SCOTT vs. METROPOLITAN TRANSPORTATION**
**Motion No.  002**

**Page 13 of 15**

13 of 15

calculating his pension benefit from his date of hire as a Metro-North police officer because beginning in January 2014, for a period of time, respondents ceased withholding contributions from his earnings. Estoppel is not available as a remedy against respondents because "estoppel may not be invoked against a municipal agency to prevent it from discharging its statutory duties" (*Matter of Parkview Assoc. v City of New York*, 71 NY2d 274, 282 [1988], *rearg denied* 71 NY2d 995 [1988], *cert denied* 488 US 801 [1988]), except in rare circumstances that are not present in the instant case. Moreover, estoppel is "not available against an administrative agency for the purpose of ratifying administrative error" (*Matter of Renaud v City of New York*, 269 AD2d 283, 283 [1st Dept 2000]).

Although petitioner argues that the three years and eight months in dispute would provide him with a greater retirement benefit, he has not demonstrated that he was entitled to this time under the terms of the Vanguard plan, the MTA pension benefit plan, or pursuant to the provisions of any statute (*Litod Paper Stock Corp. v City of New York*, 154 AD2d 280, 282 [1st Dept 1989] ["Estoppel would be available to plaintiffs against these governmental entities only if failure to apply the doctrine would operate to defeat a right legally and rightfully obtained. It cannot operate to create a right"] [internal quotation marks and citations omitted]). For the reasons discussed above, the court declines to substitute its judgment for that of the respondents, where respondents' determination not to credit petitioner's service as a custodian was not arbitrary and capricious and had a rational basis in law and in fact.

**160051/2019   MCCRAIN, SCOTT vs. METROPOLITAN TRANSPORTATION**
**Motion No.  002**

**Page 14 of 15**

14 of 15

## CONCLUSION

Accordingly it is hereby

ADJUDGED that the petition is denied and this proceeding is dismissed.

2025042116123BNMOYNE132C05A91B014623BA047A0946791EF8

| | | | | | |
|---|---|---|---|---|---|
| **4/21/2025** | | | | **NICHOLAS W. MOYNE, J.S.C.** | |
| **DATE** | | | | | |
| **CHECK ONE:** | **X** CASE DISPOSED | | | NON-FINAL DISPOSITION | |
| | GRANTED | **X** DENIED | | GRANTED IN PART | OTHER |
| **APPLICATION:** | SETTLE ORDER | | | SUBMIT ORDER | |
| **CHECK IF APPROPRIATE:** | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

**160051/2019   MCCRAIN, SCOTT vs. METROPOLITAN TRANSPORTATION**
**Motion No.  002**

**Page 15 of 15**

15 of 15